UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN ROE, :
                Plaintiff, :
: **OPINION AND ORDER**
v. :
: 16 CV 7099 (VB)
CHAPPAQUA CENTRAL SCHOOL :
DISTRICT, BOARD OF EDUCATION OF :
THE CHAPPAQUA CENTRAL SCHOOL :
DISTRICT, JOHN CHAMBERS, former Interim :
Superintendent, LYN MCKAY former :
Superintendent, ERIC BYRNE, former Acting :
Interim Superintendent, ANDREW :
SALESNICK, former Principal, ROBERT :
RHODES, Principal, and CHRISTOPHER :
SCHRAUFNAGEL, former teacher, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff[1] brings this action against defendants Chappaqua Central School District ("CCSD"); the Board of Education of CCSD ("Board" or "Board of Education"); John Chambers, former Interim Superintendent; Lyn McKay, former Superintendent; Eric Byrne, Acting Interim Superintendent; Andrew Selesnick, former Principal; Robert Rhodes, Principal; and Christopher Schraufnagel, a former teacher, under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq., alleging that plaintiff was sexually assaulted, abused, harassed, and given drugs and alcohol by his theater teacher, beginning when he was fifteen years old, at Horace Greeley High School ("HGHS") in Chappaqua, New York. Plaintiff claims these assaults and harassment violated his liberty interest in bodily integrity as guaranteed by the Fourteenth Amendment, and discriminated against him in violation of Title IX.

---

[1]    By Order dated November 9, 2016, the Court granted plaintiff's application to proceed anonymously. (Doc. #42).

1

Before the Court is defendants CCSD, Board of Education, Chambers, McKay, Byrne, Selesnick, and Rhodes's (collectively, the "CCSD defendants") motion to dismiss the amended complaint as to them pursuant to Rule 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56. (Doc. #48).[2]

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

The following factual background is drawn from the amended complaint and the parties' submissions in support of and in opposition to the pending motion. For purposes of deciding the pending motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

Plaintiff, born in 1995, attended HGHS from September 2009 through graduation in June 2013.

Chambers was the Interim Superintendent of CCSD from July 1, 2009, to July 1, 2011, during plaintiff's ninth and tenth grade years at HGHS.

McKay was appointed Superintendent of CCSD on July 1, 2011, commencing in plaintiff's eleventh grade year. She resigned her employment with CCSD on October 31, 2016.

Byrne was appointed Acting Interim Superintendent of CCSD on November 1, 2016.

Selesnick was appointed Principal of HGHS on July 1, 2003, and remained in that position through June 30, 2012. From July 1, 2012, through June 30, 2015, Selesnick was CCSD's Assistant Superintendent for Human Resources and Title IX Compliance Officer.

---

[2] Defendant Schraufnagel has been served with a summons and amended complaint (see Doc. #41), but has not appeared in this case or filed a motion or answer.

2

Rhodes was appointed Principal of HGHS on July 1, 2012, and continued to serve in that capacity as of the date plaintiff filed his amended complaint.

Schraufnagel was a tenured speech and theater teacher at HGHS at all times relevant to plaintiff's claims.

Plaintiff claims that between the ages of fifteen and seventeen, while he was a student at HGHS, he was sexually abused, sexually harassed, and provided with drugs and alcohol by Schraufnagel. Plaintiff alleges Schraufnagel abused him on school grounds, regularly made sexually explicit comments to his students, including plaintiff, and provided his students with drugs and alcohol during theater field trips to New York City and on an international school trip to Greece.

The amended complaint alleges numerous incidents of depraved conduct by Schraufnagel. Most seriously, plaintiff alleges two sexual assaults. The first occurred in May or June of 2011, on a catwalk above the school's auditorium during a weekend "Stagecraft" class taught by Schraufnagel. Plaintiff claims Schraufnagel insisted it was time for plaintiff to "hook up" with him, brought plaintiff to the catwalk, pushed plaintiff to his knees, and directed the fifteen-year-old student to perform oral sex on him. (Am. Compl. ¶ 115–17).

Plaintiff claims over the next two years, Schraufnagel sent him text messages repeatedly throughout each day and insisted that plaintiff respond immediately.

Schraufnagel also allegedly told plaintiff he had had sex with several other HGHS students before plaintiff.

When plaintiff was sixteen years old, between February 17 and February 25, 2012, Schraufnagel took plaintiff and approximately nine other HGHS students to Greece for what plaintiff claims, and defendants dispute, was a HGHS-sanctioned theater trip. Plaintiff claims

3

the trip to Greece was planned by Schraufnagel with his theater students during class time and was integrated into the students' curriculum.

During the trip to Greece, plaintiff claims Schraufnagel drank alcohol each night to the point of intoxication, and encouraged the students, including plaintiff, to do the same.

One night during the trip, Schraufnagel instructed plaintiff and another HGHS student to come to his hotel room. Schraufnagel gave both students vodka and they became inebriated. Plaintiff claims Schraufnagel pulled the other student's pants off him and performed oral sex on him. Schraufnagel then instructed plaintiff to do the same while Schraufnagel watched. The other student then left the hotel room, and Schraufnagel implored plaintiff to have sex with him, but plaintiff refused and left the hotel room.

Plaintiff graduated from HGHS in the spring of 2013, and started college that fall.

Still involved with Schraufnagel, plaintiff returned to HGHS to help direct the HGHS Theater Repertory Company's "Spring Fest" plays in the springs of 2014 and 2015.

In June of 2015, plaintiff observed indications that Schraufnagel's sexually predatory behavior was being directed towards other HGHS students. Around this time, Schraufnagel discussed a younger student with plaintiff, telling him "he's the new you." (Am. Compl. ¶ 151). Fearing this meant Schraufnagel was abusing more students, plaintiff decided to confront Schraufnagel.

On June 11, 2015, plaintiff met with Schraufnagel. Plaintiff demanded that Schraufnagel resign his teaching position immediately or he would report him to the police; Schraufnagel agreed to resign. Plaintiff then met with other HGHS students out of concern for their safety and welfare. One student confirmed to plaintiff he had been abused.

On June 15, 2015, Schraufnagel went on paid leave from his position with CCSD.

4

On June 16, 2015, plaintiff reported the facts of his abuse by Schraufnagel to the New Castle Police Department. When police searched HGHS for evidence of the criminal allegations against Schraufnagel in August 2015, officers recovered two boxes of empty liquor bottles, and two partially full bottles of vodka from Schraufnagel's office.

On September 4, 2015, Schraufnagel resigned.

On October 25, 2015, Schraufnagel was arrested and charged with one felony count of third-degree criminal sex act, two misdemeanor counts of endangering the welfare of a child, and four misdemeanor counts of third-degree sexual abuse. These charges were based on the complaints of three victims, each of whom was fifteen years old at the time of the alleged misconduct. The felony charge against Schraufnagel arose from his sexual abuse of plaintiff. All of the charged criminal acts occurred at HGHS between May 1, 2011, and June 5, 2015.

On November 7, 2016, Schraufnagel pleaded guilty to three charges of sexually abusing and endangering the welfare of a child on the grounds of HGHS between May 2011 and June 2015, including two instances that involved "sexual contact." Schraufnagel's plea allocution included criminal conduct towards plaintiff.

Plaintiff claims CCSD was informed in 2011, the year plaintiff was first sexually abused by Schraufnagel, of accusations about Schraufnagel similarly abusing another student at HGHS. This allegation is based on an affidavit of an alleged abuse victim's mother in a case filed against Schraufnagel and the CCSD defendants in New York Supreme Court, John Doe, et al. v. Chappaqua Central School District, et al., Index No. 61489/2016. In the affidavit, the victim's mother claims:

> Principal Rhodes . . . informed me that in 2011 there were accusations made about Mr. Schraufnagel similarly abusing a student at HGHS. I understand that rather than referring those allegations to the police department the Chappaqua Central School District chose to keep it quiet and do their own investigation. We are not

> privy to the scope of that investigation or to the findings. However, we do know that no actions were taken against Mr. Schraufnagel between 2011 and 2015.

(Am. Compl. ¶ 178; Gaughran Decl. Ex. 3).

Plaintiff also alleges in or about the late fall of 2011, Schraufnagel told plaintiff he was worried about a legal problem involving an HGHS student, though he did not specify the nature of the problem.

On September 30, 2016, HGHS math department chair George Benack told the Board of Education and McKay at a CCSD Board meeting that he was aware of three individuals, including himself, who contacted CCSD administrators regarding their concerns about Schraufnagel "long before June of 2015." (Am. Compl. ¶ 7).

## DISCUSSION

I. Legal Standard

    A. Motion to Dismiss Under Rule 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

  B. <u>Motion for Summary Judgment Under Rule 56 Standard of Review</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See id. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The "mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find" for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

II. Analysis

    A. Section 1983 Claim

The CCSD defendants argue the amended complaint fails to state a cause of action against them under Section 1983.

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of

state law." Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997). Plaintiff alleges the violation of his right to bodily integrity as guaranteed by the Fourteenth Amendment.

Plaintiff must allege each defendant's personal involvement in the claimed violation of plaintiff's rights. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013). Furthermore, a defendant may not be held liable under Section 1983 solely because that person employs or supervises a person who violated the plaintiff's rights. See Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

A supervisor's personal involvement in an alleged constitutional violation may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[3]

The CCSD defendants submitted two affidavits—one from former HGHS Principal Selesnick and the other from current HGHS Principal Rhodes—in which both affiants deny having received prior notice of Schraufnagel's abusive conduct.

---

[3] After Ashcroft v. Iqbal, however, district courts within this circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

9

Specifically, Selesnick claims that while he was HGHS Principal from 2003 through June 30, 2012, he never became aware of a complaint or accusation that Schraufnagel was sexually abusing a student at HGHS. (Henderson Decl. Ex. B).

Rhodes claims he did not become principal at HGHS until July 1, 2012, and that he was not employed at HGHS or by CCSD in any capacity before that time. He further claims he never stated to any alleged victim's parents that there were accusations in 2011 about Schraufnagel similarly abusing a student at HGHS. Instead, Rhodes says he told a parent that after he began his employment in July 2012, he met with Assistant Principal Michele Glenn to review HGHS personnel. Rhodes claims Glenn told him:

> something to the effect that [Schraufnagel] had been spoken to in 2011 regarding a matter. The allegation was not regarding any type of sexual abuse. The incident I referred to in 2011, which I obviously was not a part of, upon information and belief, had to do with a weekend trip to Canada where there was an allegation that a student or chaperone may have been drinking alcohol on the trip. I was told by Ms. Glenn that the allegation was unfounded and that was the only reference that was made to me of any 2011 incident involving Christopher Schraufnagel.

(Henderson Decl. Ex. C).

Rhodes also addressed plaintiff's allegation that HGHS math department chair George Benack told the Board of Education and McKay at a CCSD Board meeting on September 30, 2016, that he was aware of three individuals, including himself, who contacted CCSD administrators regarding their concerns about Schraufnagel "long before June of 2015." (Am. Compl. ¶ 7). Rhodes attached to his affidavit "the only email [he] received from George Benack," which was dated March 12, 2014, and addressed his concerns about the inappropriate sexual content of various plays and musicals directed by Schraufnagel at HGHS. (Henderson Decl. Ex. C).

Rhodes further claims all students were given a copy of HGHS's student handbook, which included "Sexual Harassment Policy 5080" regarding sexual abuse and discrimination. Rhodes says during his time as Principal, the HGHS student handbook was disseminated to students directly during class.

Finally, Rhodes alleges the trip to Greece and the trips to New York City referred to in the amended complaint, were not school-sponsored. Instead, "apparently the theater students arranged [the trips] with Mr. Schraufnagel." (Henderson Decl. Ex. C).

Thus, the CCSD defendants submitted affidavits and documents that they contend refute plaintiff's allegations in the amended complaint.

In reviewing a Rule 12(b)(6) motion, in addition to the operative complaint, a court may also consider exhibits attached to the complaint or incorporated by reference; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Rule 201 of the Federal Rules of Evidence permits judicial notice of a fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also United States v. Bryant, 402 F. App'x 543, 545 (2d Cir. 2010) (summary order).

However, it is generally improper to consider factual averments contained in affidavits on a Rule 12(b)(6) motion. See Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). Accordingly, the Court declines to consider the CCSD defendants' affidavits in connection with the motion to dismiss.

Recognizing that consideration of the Selesnick and Rhodes affidavits may require the Court to convert the CCSD defendants' motion to dismiss pursuant to Rule 12(b)(6) to a motion for summary judgment pursuant to Rule 56, the CCSD defendants argue they are also entitled to summary judgment.

Plaintiff contends the CCSD's motion for summary judgment, at this early stage before plaintiff has had the opportunity to pursue discovery, is premature. Moreover, plaintiff argues the Selesnick and Rhodes affidavits do not conclusively establish the CCSD defendants received no notice of the need to investigate Schraufnagel. Rather, defendants' affidavits raise a factual issue that cannot be resolved by summary judgment.

In further support of its opposition to the CCSD defendants' motion, plaintiff claims his ongoing investigation has revealed that at a CCSD meeting conducted by McKay and an assistant superintendent on September 19, 2016, an HGHS parent stated that when she was chairperson of the HGHS parent-teacher association, another parent came to her "with troubling information" about Schraufnagel. (Pl.'s Opp'n Br. at 4; Gaughran Decl. ¶¶ 41–47, Ex. 6). The HGHS parent said she shared this report with the former HGHS principal, but nothing was done in response.

Moreover, plaintiff has submitted a declaration in accordance with Rule 56(d), which "includes 'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben., 621 F. App'x 70, 73 (2d Cir. 2015), cert. denied, 136 S. Ct. 2463, 195 L. Ed. 2d 801 (2016) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994)).

In light of the allegations contained in the amended complaint and plaintiff's counsel's Rule 56(d) declaration, at this early stage in the litigation and on this record, the Court rejects the CCSD defendants' contention that they are entitled to summary judgment on plaintiff's Section 1983 claim.

Furthermore, the parties' competing affidavits raise questions of fact that cannot be resolved on a motion to dismiss, and, accordingly, that motion is denied as well.[4]

B.     Monell Claim

Plaintiff alleges the CCSD's unofficial policy and custom of failing to train, investigate, and supervise foreseeably led to plaintiff's injuries. The CCSD defendants argue there are insufficient allegations in the amended complaint to support liability under Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978).

The Court disagrees with the CCSD defendants.

A school district may be liable for deprivation of a student's rights pursuant to Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. at 694; see also Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257–58 (2009) (discussing school district liability under Section 1983). "A school district's liability under Monell may be premised on any of three theories: (1) that a

---

[4] The individual CCSD defendants also argue they are entitled to qualified immunity because "[t]here is no evidence to support an allegation that any of the non-Schraufnagel individual defendants were in any way personally involved in any claimed unconstitutional conduct, including a failure to 'supervise' or 'train' or 'investigate' co-defendant Schraufnagel." (Def.'s Br. at 9). As discussed above, the Court concludes it is premature to make a determination regarding the CCSD defendants' personal involvement in the alleged constitutional violations and, accordingly, the Court declines to reach the qualified immunity issue at this time and on this record. The CCSD defendants' motion regarding qualified immunity is denied without prejudice to renewal after plaintiff has had the opportunity to conduct discovery and further develop the record.

district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" Hurdle v. Bd. of Educ., 113 F. App'x 423, 424–25 (2d Cir. 2004) (summary order) (quoting Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004)).

To demonstrate a municipal custom, a plaintiff need not show the existence of a practice formally approved by an appropriate decisionmaker so long as "the relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (citations omitted). In addition to showing a practice is widespread, plaintiff must also prove the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

A municipal custom may involve either affirmative conduct or a failure to act. Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."). "The inference that a policy existed may . . . be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (citing City of Canton v. Harris, 489 U.S. 378, 388–92 (1989)).

Here, plaintiff alleges the CCSD defendants failed to train their staff, teachers, and students to recognize the signs of abusive and sexually harassing behavior, and failed to provide their staff, teachers, and students with effective avenues for expressing their concerns when they occurred. Specifically, the amended complaint alleges plaintiff "was never trained as to the

identity of any individuals at HGHS to whom he should report [a sexual assault by a teacher] or how to do so" (Am. Compl. ¶ 200), and that the CCSD teachers and staff "who walked through the theater department . . . inevitably heard grossly inappropriate language from [Schraufnagel's] students, saw a constant cluster of students tightly crammed in his office, an office decorated with dolls adorned with pubic hair, and . . . smelled marijuana in the building on a number of occasions," were not trained to recognize signs of sexual abuse in school and to whom such suspicions should be reported. (Id. ¶ 201).

Plaintiff further claims notices of Schraufnagel's inappropriate conduct with students should have prompted a thorough investigation into Schraufnagel's misconduct. The amended complaint alleges all of the CCSD defendants were on notice of allegations in 2011 that Schraufnagel had abused a student, and that there were numerous other warnings of inappropriate conduct by Schraufnagel that should have prompted an investigation.

Plaintiff alleges Schraufnagel was essentially unsupervised in his role as a theater teacher at HGHS. Schraufnagel had unrestricted access to his students during class, in his office, during weekend-long rehearsals, and during trips to New York City and beyond that were unchaperoned by any adults other than Schraufnagel and his husband.

The Court concludes plaintiff's allegations plausibly plead a Monell violation by the CCSD defendants.

Accordingly, the CCSD defendants' motion to dismiss is denied as to this claim.

C.   Title IX Claim

The amended complaint alleges plaintiff was sexually assaulted and harassed at HGHS and on school-sponsored trips, and exposed to a hostile environment, which impeded his ability to participate in the CCSD's educational opportunities in violation of Title IX. The CCSD

defendants move to dismiss plaintiff's Title IX claim, arguing the CCSD defendants had no actual knowledge of the alleged abuse.[5]

"To state a hostile educational environment harassment claim under Title IX, a plaintiff must allege that []he was subjected to 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature,' and that this behavior was 'sufficiently severe or pervasive' to alter the conditions of [his] educational environment and to create an abusive educational environment, analyzed from the perspective of a reasonable person.'" Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005) (quoting Crandell v. New York Coll. of Osteopathic Med., 87 F. Supp. 2d 304, 314 (S.D.N.Y. 2000)).

A school district may be liable for damages under Title IX if it is deliberately indifferent to knowledge of a teacher's prior sexual harassment or abuse of students. Cf. Gant v. Wallingford Bd. Of Educ., 195 F.3d 134, 141 (2d Cir. 1999); see also Zamora v. North Salem Cent. School Dist., 414 F. Supp. 2d 418, 424 (S.D.N.Y 2006).

As discussed above, plaintiff has alleged the CCSD defendants had actual notice of prior abuse of a student by Schraufnagel. Moreover, plaintiff claims the CCSD defendants failed to develop a Title IX policy that complies with the statute, and failed to provide plaintiff, his fellow students, and HGHS teachers and staff, with training on the scope and purpose of Title IX, information regarding inappropriate behavior by teachers towards their students, or training on how to report harassing behavior. Plaintiff also alleges numerous occurrences of outrageous conduct constituting sexual harassment, including sexual assault.

---

[5] The CCSD defendants also argue they cannot be found liable under Title IX in their individual capacities. However, plaintiff does not allege any claims against the CCSD defendants individually under Title IX. (See Pl.'s Opp'n Br. at 23 n.7).

Accordingly, plaintiff has plausibly alleged the CCSD defendants were deliberately indifferent to the substantial risk of harm to plaintiff by failing to comply with Title IX.

## CONCLUSION

The CCSD defendants' motion to dismiss is DENIED.

By separate order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion. (Doc. #48).

Dated: September 15, 2017
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge