UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHN ROE,

                                     Plaintiff,

       -against-

CHAPPAQUA CENTRAL SCHOOL DISTRICT;
BOARD OF EDUCATION OF THE CHAPPAQUA
CENTRAL SCHOOL DISTRICT; LYN MCKAY, Former
Superintendent; ANDREW SELESNICK, former Principal;
ROBERT RHODES, Principal; and CHRISTOPHER
SCHRAUFNAGEL, former Teacher, each in their official
and individual capacities,

                                     Defendants.
------------------------------------------------------------------------x

No. 7:16-CV-7099 (VB)

**SECOND AMENDED
COMPLAINT**

**JURY DEMAND**

Plaintiff John Roe, by his attorneys, Asher Gaughran P.C., respectfully alleges:

## <u>INTRODUCTION</u>

1.    Plaintiff John Roe ("ROE"), a graduate of Horace Greeley High School ("HGHS") in Chappaqua, New York, was between the ages of 15 and 17 sexually abused, sexually harassed, and provided with drugs by the high school's theater teacher and Performing Arts Department Chairperson, Christopher M. Schraufnagel ("Defendant SCHRAUFNAGEL").

2.    The outrageous conduct of Defendant SCHRAUFNAGEL includes, without limitation, subjecting ROE to sexual abuse on school grounds, routinely making sexually explicit comments to his students, including ROE, conducting alcohol and drug-fueled HGHS theater field trips to New York City that included ROE, and leading HGHS students on an international school trip to Greece, during which these underage students, including ROE, were directed by

Defendant SCHRAUFNAGEL to engage in sexual encounters with the teacher and with one another.

3.      These acts occurred on school grounds and on school field trips, and were made possible by the CHAPPAQUA CENTRAL SCHOOL DISTRICT ("Defendant CCSD"), CCSD BOARD OF EDUCATION ("Defendant BOE"), and CCSD administrators MCKAY, SELESNICK, and RHODES (collectively, the "CCSD Defendants") who, as a matter of policy, practice and custom, failed to exercise appropriate oversight of Defendant SCHRAUFNAGEL, despite having received actual notice that he was inappropriate with and abusive of his students.

4.      In 2011, the year that ROE was first sexually abused by Defendant SCHRAUFNAGEL, Defendant CCSD was informed that there were accusations made about Defendant SCHRAUFNAGEL similarly abusing another student at HGHS.

5.      Upon information and belief, Defendant CCSD received numerous other complaints regarding Defendant SCHRAUFNAGEL's language and behavior, none of which were appropriately investigated.

6.      In or about the late fall of 2011, Defendant SCHRAUFNAGEL told ROE that he was worried about a legal problem involving an HGHS student.  He did not specify the nature of the legal problem.

7.      On September 30, 2016, HGHS Math Department Chair George Benack told the Defendant BOE and Defendant MCKAY at a CCSD Board meeting that he was aware of three individuals, himself included, who contacted District administrators regarding their concerns about Defendant SCHRAUFNAGEL "long before June of 2015."

8.      These multiple notices, of which, upon information and belief, all the named CCSD Defendants were aware, should have prompted a thorough investigation of Defendant SCHRAUFNAGEL's inappropriate and illegal misconduct with his minor students.  They did not.

9.      These reports should have resulted in appropriate supervision of Defendant SCHRAUFNAGEL, which would have ensured that he did not continue to sexually molest, drug, and sexually assault his minor students.  They did not.

10.      As a result of repeated instances of sexual abuse and harassment of ROE and at least six other HGHS students, Defendant SCHRAUFNAGEL was charged by the Westchester County District Attorney with one felony count of third-degree criminal sex act and six misdemeanor counts: two of endangering the welfare of a child and four of third-degree sexual abuse.  Defendant SCHRAUFNAGEL was charged with a single felony based upon his sexual abuse of ROE.

11.      On November 7, 2016, Defendant SCHRAUFNAGEL pled guilty to three charges of sexually abusing and endangering the welfare of a child on the grounds of the high school between May 2011 and June 2015, including two instances that involved "sexual contact."  His criminal conduct towards ROE was included in his plea.

12.      Defendant SCHRAUFNAGEL was due to be sentenced on February 9, 2017 to three years of probation in the case. He has consented to renounce his teaching license and was placed on the New York State Sex Offender registry.

13.     In addition, there are multiple civil legal actions and applications pending on behalf of six other HGHS students against Defendant SCHRAUFNAGEL and the CCSD Defendants in New York State Supreme Court regarding abusive and harassing behavior at the high school.[1]

14.     The years of abuse of ROE were made possible by the willful indifference of the CCSD Defendants to the well-being of their students and their failure to follow federal and state law, their own policies or common sense by failing to properly train, investigate and supervise their staff.

15.     For the pertinent time period, Defendant SCHRAUFNAGEL was permitted, if not encouraged, by the CCSD Defendants to create a wholly self-contained, unscrutinized world on the HGHS campus where students were exposed to a steady stream of abusive and depraved behavior.   Left entirely to his own devices, Defendant SCHRAUFNAGEL constructed an unmonitored, cult-like atmosphere where children were left to fend for themselves against his predations.

16.     The CCSD Defendants' willful indifference to ROE's right to attend school with his bodily integrity intact, in an environment free of sexual harassment, led to the years of abuse by Defendant SCHRAUFNAGEL that he suffered as a HGHS student.

17.     ROE brings the instant action pursuant to 42 U.S.C. § 1983, alleging that his right to bodily integrity as guaranteed by the Fourteenth Amendment was violated by each of the CCSD Defendants.   His right to equal protection was violated by Defendant SCHRAUFNAGEL. In addition, ROE alleges that he was sexually assaulted and harassed at the high school, which

---

[1]     *Anonymous Student #4 et al. v. Chappaqua Central School District et al.,* Index No. 057576/2016; *J.L. et al. v. Chappaqua Central School District et al.,* Index No. 060109/2016, and *John Doe, et al. v. Chappaqua Central School District, et al.,* Index No. 61489/2016.

4

prevented his ability to participate in the District's educational opportunities in violation of Title

IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").

18.     ROE also asserts state law claims for assault and battery and intentional infliction

of emotional distress against Defendant SCHRAUFNAGEL, and claims for negligence, and

negligent failure to train, supervise and investigate against the CCSD Defendants.

19.     The decision of the CCSD Defendants not to adequately investigate complaints

regarding Defendant SCHRAUFNAGEL despite the notice provided, and not to adequately train

staff and students or supervise this teacher, were all deliberate choices which predictably led to the

violation of ROE's right to attend school with his bodily integrity intact and free of sexual

harassment.

20.     The CCSD Defendants owed ROE a cognizable duty of care. They breached that

duty and ROE suffered damage as a proximate result of that breach.

## JURISDICTION AND VENUE

21.     Jurisdiction is present under 28 U.S.C. §§ 1331, 1343 and 1367.

22.     Venue is proper in the Southern District of New York pursuant to 18 U.S.C. § 1965

(c) and 28 U.S.C. § 1391(b), because the claims arose in this District and the Defendants reside in,

transact business in, or maintain a principal place of business in Westchester County.

## PARTIES

23.     ROE, a resident of Westchester County in the State of New York, was born on

September 14, 1995.

24.     At all times relevant to this Complaint, ROE resided in the hamlet of

Chappaqua, in the town of New Castle, New York, within the geographical boundaries of the

Defendant CCSD's school district zone.

25.    ROE attended the CCSD's schools from the second grade through the date of his graduation in June 2013.

26.    From September 2009 through June 2013, ROE attended HGHS in the CCSD.

27.    Defendant CCSD was and is a municipal corporation and local educational agency which maintains its principal place of business at 66 Roaring Brook Road, Chappaqua, New York 10514, in Westchester County.

28.    Defendant CCSD and each of its component schools are recipients of federal financial assistance as defined in 20 U.S.C. § 1681(c). The District is a "person" within the meaning of 42 U.S.C. § 1983.

29.    At all times relevant to this Complaint, Defendant CCSD owned, operated, controlled, administered and maintained HGHS, which is also located at 66 Roaring Brook Road, Chappaqua, New York 10514, in Westchester County.

30.    At all times relevant to this Complaint, Defendant BOE of the CCSD was and is a public benefit corporation, duly organized and existing by virtue of the laws of the State of New York, maintaining its principal place of business at 66 Roaring Brook Road, Chappaqua, New York 10514, in Westchester County.

31.    The School Board is a "person" within the meaning of 42 U.S.C. § 1983.

32.    Defendant Lynn McKay ("Defendant MCKAY") was appointed the Superintendent of the CCSD on July 1, 2011, commencing in ROE's eleventh grade year.  She resigned from her employ with the CCSD on October 31, 2016.

33.    Defendant Andrew Selesnick ("Defendant SELESNICK") was appointed Principal of the CCSD's HGHS on July 1, 2003 and served in that position through June 30, 2012. From July 1, 2012 through June 30, 2015, Defendant SELESNICK served as CCSD's Title IX

6

Compliance Officer. From July 1, 2012 through June 30, 2015, Defendant SELESNICK also served as the CCSD's Assistant Superintendent for Human Resources.

34.     He currently serves as the Superintendent of the neighboring Katonah-Lewisboro School District.

35.     Defendant Robert Rhodes ("Defendant RHODES") was appointed the Principal of HGHS on July 1, 2012. He resigned from his employ with the CCSD on June 22, 2018.

36.     Defendant Christopher Schraufnagel ("Defendant SCHRAUFNAGEL") was a tenured Speech and Theater Teacher at CCSD's HGHS at all times relevant to this action.

37.     All of the Defendants to this action were state actors with respect to the misconduct alleged herein.

**STATEMENT OF FACTS**

**DEFENDANT SCHRAUFNAGEL'S BRAZENLY INAPPROPRIATE <u>PUBLIC CONDUCT WAS IGNORED BY THE CCSD DEFENDANTS</u>**

*The Theater Wing*

38.     In addition to the inadequately responded to reports that Defendant SCHRAUFNAGEL had engaged in sexual misconduct with a student, there were multiple indications that oversight of Defendant SCHRAUFNAGEL was needed.  These signs were repeatedly ignored by Defendant CCSD administration, permitting Defendant SCHRAUFNAGEL to engage in outrageous misconduct with absolute impunity for many years as the HGHS theater teacher and Performing Arts Department Chairperson.

39.     Defendant SCHRAUFNAGEL's students convened every day in his office, in his classes, and in the auditorium, where, led by their teacher, they would openly discuss sexual practices, and drug and alcohol abuse.

40.     Defendant SCHRAUFNAGEL's office, known to students as the "Schrauffice," was housed within a wing of HGHS that included the auditorium and four classrooms.

41.     The "Schrauffice" was a pivotal social hub, and the center of high school life for Defendant SCHRAUFNAGEL's many student acolytes, most but not all of whom were in theater classes or in the HGHS's Theatre Repertory Company.

42.     Unlike the other areas of HGHS where students regularly congregated during free time under the eye of staff and teachers, including the Commons, the cafeteria, the library and the courtyard of the high school, the Schrauffice was a sequestered area without windows where the initiated were encouraged to spend as much unscrutinized time as possible with their predatory teacher.

43.     The Schrauffice was regularly crammed with as many as 12 or more students at a time, who spent every lunch period and free class in the cramped room; some even cut classes to be there.

44.     There were rarely any adults in the theater wing of HGHS other than Defendant SCHRAUFNAGEL, and music teachers Maureen Callan, H. Davis Knobloch and Raymond Lucia.

45.     These high school teachers repeatedly walked through groups of theater students *en route* to their classrooms.

46.     As the teachers walked through the groups of students, they were exposed to repeated, open discussions about drugs and sexual activities; the students also injected obscenities into their conversations as much as possible.

47.     The content and tone of these repeated discussions clearly demonstrated a need for appropriate investigation and adult supervision.

48.     On rare occasions, assistant principals would appear in the theater wing.

49.     In the theater department bathroom, students regularly inhaled drugs such as Adderall.

50.     Between 2011 and 2015, students routinely smoked marijuana on the "catwalk" within the auditorium that served as Defendant SCHRAUFNAGEL's classroom.

51.     The drug-taking was so persistent that the smell of marijuana continually pervaded the auditorium, including during school days.

52.     These obvious signs of illegal activity prompted no action by Defendant CCSD staff.

53.     Students regularly utilized the catwalk above the auditorium stage to engage in sexual activity, which they then recounted to Defendant SCHRAUFNAGEL and their classmates.

### Theater Productions

54.     Defendant SCHRAUFNAGEL repeatedly insisted upon staging student theater productions with patently inappropriate content.

55.     The plays in which Defendant SCHRAUFNAGEL directed HGHS students, some of whom were as young as 14, featured an orgy scene ("She Had Some Horses"), corruption of minors into sexual playthings ("Les Liaisons Dangereuses") strip teases ("The Wedding Singer" and "Gypsy"), scenes of sex and drug use ("Lysistrata," "Marat/Sade," and "Hair"), a dominatrix ("Psycho Beach Party") and a scene in which the act of fellatio was portrayed behind a translucent scrim ("Six Degrees of Separation").

56.     Upon information and belief, building principals Defendant SELESNICK and Defendant RHODES routinely attended dress rehearsals of these productions and granted them their imprimatur to proceed without removal of any explicit material.

57.     Prior to the performance of "She Had Some Horses", Defendant SELESNICK was informed that it included an inappropriate orgy scene.

58.     Defendant SELESNICK determined that the scene was tasteful and should remain in the play.

59.     These oddly lewd displays prompted no increased oversight or any other action by the Defendant CCSD.

60.     Instead, upon information and belief, Defendant SCHRAUFNAGEL was paid substantial additional sums for his theater direction and chaperoning of student trips.

61.     Between 2003 and 2015, Defendant SCHRAUFNAGEL was paid $244,965.00 above his regular salary in Defendant CCSD payments classified as "XTRADUTY".

62.     In a Defendant CCSD newsletter article about the HGHS Theatre Repertory Company, Defendant SCHRAUFNAGEL proclaimed, "I'm more drawn to the provocative; I think the students get more of an experience that way."

***Defendant CCSD Ignored Rampant Drug and Alcohol Use and Pervasive Sexual Harassment***

63.     Defendant SCHRAUFNAGEL repeatedly drank alcohol at school, at times with students, and carried a flask with him in a gym bag.

64.     Students occasionally attended classes and performed in Defendant SCHRAUFNAGEL's plays inebriated and under the influence of illegal drugs.

65.     On one occasion, when ROE told Defendant SCHRAUFNAGEL in his office that he was feeling anxious, the teacher gave him a tablet of the prescription tranquilizer, Klonopin. At another time, he gave ROE six of these tablets at the high school.

66.     During classes, Defendant SCHRAUFNAGEL would routinely treat his students to stories of his days as a drug dealer in New York City.  He bragged, for example, that he made

special blends of the prescription drug Ketamine and other illegal substances to produce a recreational drug that he sold to club-goers.

67.     The pervasive sexual harassment to which Defendant SCHRAUFNAGEL's students, including ROE, were subjected included a steady stream of grossly inappropriate commentary from their teacher.

68.     On several occasions, he told his classes about an experience he had had as a little boy.  He stated that he went to a friend's house, where his friend's older brother displayed his genitalia wrapped in Saran Wrap and proceeded to rape a sleeping toddler.

69.     On another occasion, he told his class that he slept with an old man who had a "wrinkly ass"; Defendant SCHRAUFNAGEL observed to his students that the man should work out more.

70.     He spoke constantly to the students about which of his male students he thought were "cute", who had the largest genitalia, and who in his classes engaged in sexual activity with whom.

71.     Defendant SCHRAUFNAGEL constantly prodded his students for details of the sex lives of his male homosexual students.

72.     Defendant SCHRAUFNAGEL periodically selected one of the homosexual male students in the theater group as his appointed "proto-gay", a play on the word protégé.

73.     ROE was one of the teacher's "proto-gays."

74.     He regaled the students with tales of a former student who could ejaculate across the room.

75.     He forced the children in his classes to conceive of themselves as sexual beings, whether they were ready to do so, or not.

11

76.    Defendant SCHRAUFNAGEL used harsh, sexualized language to harass HGHS students in a variety of ways, which created a harassing, hostile and sexually charged atmosphere.

77.    He repeatedly identified and publicly ridiculed one student for what he claimed was his excessively large posterior.

78.    He repeatedly, and publicly, labeled as homosexual several students who self-identified as straight.

79.    Defendant SCHRAUFNAGEL also subjected his pupils to inappropriate "games."

80.    These games included "Trainwreck" which required students to share their real or created illicit drug histories.

81.    At his direction, they played "Sick Secret Santa" in which students were encouraged to shoplift gifts or make them out of ingredients such as pubic hair, semen or feces.

82.    The product of those games, such as puppets and voodoo dolls crowned with wigs constructed of pubic hair, lined the shelves in Defendant SCHRAUFNAGEL's office at HGHS, visible to the casual observer.

83.    Students were encouraged by Defendant SCHRAUFNAGEL to vie with one another in sharing their sexual exploits and drug-related endeavors. Outrageousness was encouraged and rewarded by his approbation.

84.    This wanton, destructive subculture was enabled by the willful indifference of the CCSD Defendants.

85.    Upon information and belief, the HGHS Counseling Department was aware that Defendant SCHRAUFNAGEL's students turned to him, rather than their guidance counselors, with questions about sex.

86.     Defendant SCHRAUFNAGEL was frequently reviewed by HGHS students on "RateMyTeacher," a publicly accessible and widely known website that publishes anonymous teacher reviews.

87.     A public post dated June 14, 2004 reads, "Schrauf is that rare teacher that is as fun outside of class as he is in class. Don't be scared by his tantrums; it's just the diva in him shining through."

88.     A public post, dated September 1, 2010, reads "I hate how he treats people makes me scared to take something I have been doing since I was 5 he should have been fired by now[.]"

89.     Another public post dated September 20, 2010 states: "He is easy anyone can get with him.  He's helpful in the way that he'll always lend a hand (smiley face) he's as clear as crystal meth, and the most popular girl in school by far."

90.     These readily accessible postings on RateMyTeacher, which remain online to this date, triggered no additional oversight of this teacher.

***Defendant Schraufnagel was Granted a Level of Autonomy Not Provided to Other Teachers***

91.     Instead of oversight, Defendant SCHRAUFNAGEL was given a level of autonomy and privacy with his students that was not permitted any of the other teachers at HGHS.

92.     Defendant SCHRAUFNAGEL scheduled classes for Stagecraft, one of the classes he taught, after school during weekdays, and every Saturday and Sunday.

93.     He routinely kept HGHS students in his office and in the school theater throughout the weekend, and into the night.

94.     There was no supervision of these weekend classes, which frequently extended from 9:30 a.m. to 11:00 p.m. on both Saturdays and Sundays.

13

95.     Upon information and belief, Defendant SCHRAUFNAGEL's husband, Troye Evers, was employed as a hairdresser and make-up artist on HGHS theater productions for years.

96.     Upon information and belief, Evers was not required to undergo any fingerprinting or background checks, and spent hundreds of unsupervised hours with the students on evenings, over weekends, and on class trips.

97.     Evers repeatedly gave the underage ROE alcohol and cigarettes and smoked and drank with him at HGHS.

98.     Upon information and belief, Evers smoked marijuana repeatedly with HGHS students at the high school.

99.     CCSD janitors were directed by Defendant SCHRAUFNAGEL to steer clear of the theater department and refrain from cleaning the theater department area until late at night after the class disbanded.

100.    While HGHS students worked on productions until late at night, their parents were discouraged from entering the theater department.

101.    Upon information and belief, no CCSD administrators ever visited the theater department on a weekend to observe what was going on during the Stagecraft classes.

102.    Upon information and belief, the CCSD Defendants failed to comply with their contractual responsibilities to ensure that Defendant SCHRAUFNAGEL underwent a formal employment evaluation at least once every four years, including the District-mandated requirement of informal observation, two formal observations, an evaluative conference and a written evaluation.

*Frequent Field Trips to New York City Were Fueled by Drugs and Alcohol*

103.    Defendant SCHRAUFNAGEL's unfettered, wholly unsupervised access to his minor students at the empty high school on weekends, in New York City on weeknights, and abroad on holiday breaks, was permitted by the CCSD Defendants for years.

104.    Defendant SCHRAUFNAGEL organized numerous HGHS-sanctioned field trips to New York City theater productions, which included ROE and other students from the Theater Repertory Company, during the 2010-2011, 2011-2012, and 2012-2013 school years.

105.    Defendant SCHRAUFNAGEL conducted all the organizational meetings for the New York City field trips during school hours, on the school grounds of the CCSD.

106.    Tickets for these field trips were purchased by ROE's parents directly from HGHS.

107.    No chaperones or adults other than Defendant SCHRAUFNAGEL attended these outings, which were only available to HGHS students.

108.    Between November and December 2012, Defendant SCHRAUFNAGEL took his students to see *"Mies Julie"* at the St. Ann's Warehouse in Brooklyn. Before the performance, Defendant SCHRAUFNAGEL gave cocaine to ROE.

109.    During the 2012-2013 school year, there was one field trip to see "*Who's Afraid of Virginia Woolf?"* and another to see "*Sleep No More*".   Defendant SCHRAUFNAGEL and his students, including ROE, drank alcohol and became inebriated during both outings.

110.    In the spring of 2013, Defendant SCHRAUFNAGEL took the students to a production of Shakespeare in the Park at the Delacorte Theater in Central Park.

111.    During this trip, Defendant SCHRAUFNAGEL ate "firecrackers", a form of edible marijuana snack, with ROE and other students, some of whom became so intoxicated that they vomited and passed out from dehydration.

112.    The New York City drug and alcohol-fueled theater field trips were an integrated component of the HGHS curriculum.  Defendant SCHRAUFNAGEL led class-time discussions back at the high school about specifics, such as the production values of the plays they had travelled to see.

113.    Predictably, things went terribly wrong within the cloistered world of the HGHS performing arts department.

***The First Sexual Assault***

114.    It was at HGHS during one of the weekend day-long Stagecraft classes that Defendant SCHRAUFNAGEL first sexually assaulted ROE.

115.    This first sexual assault of ROE occurred between May 1, 2011 and June 24, 2011, on the catwalk area above the auditorium, when Defendant SCHRAUFNAGEL insisted that it was time for the 15-year-old to "hook up" with him.

116.    ROE tried to stave off his advances, but the 36-year-old teacher insisted that it happen "now" and brought him to the catwalk above the HGHS theater stage.

117.    On the catwalk, Defendant SCHRAUFNAGEL pushed ROE to his knees and directed the frightened 15-year-old student to perform oral sex upon him. The two then rejoined the nearby students in the auditorium.

118.    After this assault, ROE stayed away from Defendant SCHRAUFNAGEL and the theater department for more than a week, but then returned.

119.    Upon his return, Defendant SCHRAUFNAGEL told him, in words and effect, "you are just like Student Y because he would go away sometimes, but always came back."

120.   Over the next two years, ROE was involved in a coercive romantic and sexual relationship in which Defendant SCHRAUFNAGEL dominated his thoughts, feelings and academic choices.

121.   As a control mechanism, Defendant SCHRAUFNAGEL texted ROE repeatedly every day and insisted that he respond to his texts immediately.

122.   Defendant SCHRAUFNAGEL encouraged ROE to hate his parents, and frequently insisted that he was the only adult able to "take care of him", in contrast to ROE's own parents whom SCHRAUFNAGEL characterized as uncaring and homophobic.

123.   Defendant SCHRAUFNAGEL reported to ROE that this was not his first sexual relationship with a student.

124.   In fact, Defendant SCHRAUFNAGEL reported to ROE that he had had sex with several other HGHS students before him.

125.   For example, he stated that he had had sex with one HGHS student in the sound booth near in the auditorium on the day of the student's graduation in 2010.

*The Second Sexual Assault*

126.   Between February 17, 2012 and February 25, 2012, when ROE was 16 years old, Defendant SCHRAUFNAGEL took him and approximately nine other HGHS theater students to Greece for a HGHS-sanctioned theater trip.

127.   The trip to Greece was planned by Defendant SCHRAUFNAGEL with his theater students entirely during class time, on the premises of the Defendant CCSD's high school, and was wholly integrated into the Defendant CCSDs' curriculum.

128.   In fact, the entire school year curriculum taught by Defendant SCHRAUFNAGEL leading up to and following the trip to Greece consisted of ancient Greek plays, to prepare the

students for what they would see in Greece and to enable them to reflect afterwards on what they had seen during this field trip.

129.    Upon information and belief, HGHS administrators were fully aware of the trip and approved its planning.

130.    During this trip, Defendant SCHRAUFNAGEL drank alcohol every night to the point of inebriation, and encouraged all the students, including ROE, to do so as well.

131.    One night during the trip to Greece, Defendant SCHRAUFNAGEL instructed ROE and another HGHS student to come to his hotel room.

132.    Defendant SCHRAUFNAGEL plied both students with vodka, and they became inebriated.

133.    Defendant SCHRAUFNAGEL pulled the other student's pants off him and performed oral sex on him. He then directed ROE to do the same.

134.    ROE complied, while Defendant SCHRAUFNAGEL watched.

135.    When the other student left the hotel room, Defendant SCHRAUFNAGEL urged ROE to have sex with him.

136.    ROE declined and left the hotel room.

137.    ROE describes this event as the lowest moment of his life.

## ROE GRADUATED FROM HGHS BUT RETURNED TO WORK FOR DEFENDANT SCHRAUFNAGEL

138.    ROE graduated from HGHS in June 2013 and matriculated at a prestigious college in the fall of 2013.

139.    During the 2014-2015 school year, ROE determined that he could not continue at his college.

140.   Although he is a strong student, the lingering effects of years of sexual and emotional abuse by Defendant SCHRAUFNAGEL left him unable to negotiate the social and interpersonal demands of the college.

141.   In the Spring of 2015, ROE applied to transfer to an isolated and socially non-demanding college with an extremely small student body located in a remote area more than 25 miles over mountain passes from the nearest town.

142.   ROE finds this school less socially threatening than his previous college.

### AFTER YEARS OF INACTION BY THE CCSD DEFENDANTS, ROE FORCED DEFENDANT SCHRAUFNAGEL TO RESIGN

143.   Damaged from years of emotional and sexual abuse, and still in Defendant SCHRAUFNAGEL's thrall, ROE returned to HGHS to help direct the HGHS Theater Repertory Company's Spring Fest theater productions during the Springs of 2014 and 2015.

144.   These were paid positions, arranged under the aegis of BOCES and authorized by the CCSD Defendants.

145.   They were initiated by Defendant SCHRAUFNAGEL.

146.   Upon information and belief, Defendant SCHRAUFNAGEL enjoyed unfettered discretion to hire whomever he wished.

147.   ROE's time away from HGHS had provided him with perspective on the unhealthy, insular society Defendant SCHRAUFNAGEL had been permitted to establish at the HGHS campus.

148.   In June of 2015, ROE came to the realization that he had been sexually harassed and abused by Defendant SCHRAUFNAGEL throughout his years as a HGHS student.

149.     In addition, he began to see indications that Defendant SCHRAUFNAGEL's sexually predatory behavior was continuing unchecked towards other HGHS students.

150.     During his work on the Spring Fest play in 2015, ROE repeatedly witnessed Defendant SCHRAUFNAGEL's attempts to groom current HGHS students, and feared that they too were being subjected to sexual abuse.

151.     Defendant SCHRAUFNAGEL discussed one younger student with ROE during this time, telling him, in words and effect, "he's the new you", which ROE understood to mean that the teacher intended to develop that student into his newest "proto-gay".

152.     Horrified by his belief that more students would be subjected to the same abuse he had suffered for years, and lacking any confidence that Defendant CCSD would do anything to stop the pattern that they had long tolerated, this 19-year-old young man was determined to take action to stop Defendant SCHRAUFNAGEL from harming more students.

153.     ROE decided to confront the teacher in a public place, for safety reasons.

154.     ROE initially intended to confront Defendant SCHRAUFNAGEL on Wednesday, June 10, 2015, but delayed doing so when he learned that Defendant SCHRAUFNAGEL was drunk at school during the play rehearsal, as he feared confronting the teacher while he was in that state.

155.     The following afternoon, on Thursday, June 11, 2015, ROE arranged to meet Defendant SCHRAUFNAGEL at Michael's, a restaurant in Pleasantville, accompanied by his friend, former HGHS student Jane Roe.

156.     Shaking and crying, ROE told the 40-year-old teacher that he was a pedophile and a monster, and asked him "how could you do this to me?"

157.    Defendant SCHRAUFNAGEL ordered him to not "use that word [pedophile]" and insisted that "it was only you".

158.    ROE told him that he was lying, and that he "would not let him do this to anyone else."

159.    He demanded that Defendant SCHRAUFNAGEL resign his teaching position immediately or he would report him to the police.

160.    ROE's aim was to ensure that Defendant SCHRAUFNAGEL never again went near children, and never again worked in a school. He told him, in words and effect, "I will be watching you."

161.    Defendant SCHRAUFNAGEL agreed to resign.

162.    Defendant SCHRAUFNAGEL left them and returned to the high school.

163.    Concerned about the welfare of Defendant SCHRAUFNAGEL's current students, ROE returned to Chappaqua and met with several of them.

164.    One student immediately confirmed that he had been abused.  He asked ROE to come home with him to help him describe the abuse to his parents, which ROE agreed to do.

165.    The last night of the CCSD's Spring Fest, scheduled for June 12, 2015, was abruptly cancelled with no public explanation.

166.    On June 15, 2015, Defendant SCHRAUFNAGEL went on paid leave from his position at the  Defendant CCSD.

167.    On June 16, 2015, ROE reported the facts of his abuse by Defendant SCHRAUFNAGEL to the New Castle Police Department.

168.    On July 30, 2015, Defendant RHODES emailed ROE's parents, asking to meet with them.

169.    Referring to ROE, Defendant RHODES' email stated, "We started down the path we are all on because of one person's bravery.  We have a real chance to ensure student safety and welfare going forward."

170.    ROE's parents declined to meet with Defendant RHODES.

171.    On September 4, 2015, Defendant SCHRAUFNAGEL submitted his resignation, which was accepted by Defendant CCSD.

172.    When police searched HGHS for evidence in August 2015, officers confiscated two boxes of empty liquor bottles, and "two vodka bottles partially full" from Defendant SCHRAUFNAGEL's office.

## DEFENDANT SCHRAUFNAGEL IS ARRESTED

173.    On October 25, 2015, Defendant SCHRAUFNAGEL was arrested by the New Castle Police Department and charged with one felony count of third-degree criminal sex act and six misdemeanor counts: two of endangering the welfare of a child and four of third-degree sexual abuse, based on the complaints of three victims.

174.    The criminal complaint stated, *inter alia*, that each of the victims were 15 at the time of the alleged misconduct.

175.    All of the criminal acts charged occurred at HGHS. The charged activity took place between May 1, 2011 and June 5, 2015 at HGHS, and in connection with HGHS-sanctioned school activities.

176.    Defendant SCHRAUFNAGEL was charged, *inter alia*, as follows: "Between May 1, 2011 and June 24, 2011, the Defendant engaged in oral sexual conduct with a then fifteen-year-old student of the school inside the school."  That student was ROE.

22

177.    On November 7, 2016, Defendant SCHRAUFNAGEL pled guilty to three charges of sexually abusing and endangering the welfare of a child on the grounds of the high school between May 2011 and June 2015, including two instances that involved "sexual contact."  His criminal conduct towards ROE was included in his plea.

## THE CCSD DEFENDANTS RECEIVED ACTUAL NOTICE OF DEFENDANT SCHRAUFNAGEL'S ABUSE OF STUDENTS BUT FAILED TO ACT

178.    In one of the state cases filed in New York Supreme Court, entitled *John Doe, et al. v. Chappaqua Central School District, et al.*, Index No. 61489/2016, Mary Doe, the child's mother, has submitted an affidavit which includes the following allegation:

> "Principal Rhodes also informed me that in 2011 there were accusations made about Mr. Schraufnagel similarly abusing a student at HGHS.  I understand that rather than referring those allegations to the police department the Chappaqua Central School District chose to keep it quiet and do their own investigation.  We are not privy to the scope of that investigation or to the findings.  However, we do know that no actions were taken against Mr. Schraufnagel between 2011 and 2015."

179.    In or about the late fall of 2011, Defendant SCHRAUFNAGEL told ROE that he was worried about a legal problem involving an HGHS student.  He did not specify the nature of the legal problem.

180.    On September 30, 2016, HGHS Math Department Chair George Benack told the Defendant BOE and Defendant MCKAY at a CCSD Board meeting that he was aware of three individuals, himself included, who contacted District administrators regarding their concerns about Defendant SCHRAUFNAGEL "long before June of 2015."

181.    There is no indication that the CCSD Defendants conducted an effective investigation or took any remedial action based on their awareness that Defendant SCHRAUFNAGEL had abused a student or had a propensity to do so.

23

182.    Upon information and belief, multiple CCSD students had been abused by Defendant SCHRAUFNAGEL by the time ROE was first assaulted.

183.    The multiple complaints regarding Defendant SCHRAUFNAGEL should have triggered an employment review by the CCSD Defendants to assess his stability and potential risk to students.

184.    Had an effective investigation been conducted, including a review of Defendant SCHRAUFNAGEL's employment clearance, risk level, and certification to teach, multiple students including ROE would have been protected.

185.    Had the CCSD Defendants properly conducted a minimally competent investigation in response to the multiple complaints it received about Defendant SCHRAUFNAGEL, ROE could have been spared the two instances of sexual abuse and years of sexual harassment to which he was subjected by Defendant SCHRAUFNAGEL.

***Chappaqua Responds***

186.    This scandal has roiled the hamlet of Chappaqua and engendered a wide range of responses from the community.

187.    In a September 2015 email, Defendant RHODES warned HGHS students against responding to outside queries.

188.    New Castle Town Supervisor Robert Greenstein, when asked about the Schraufnagel case at a town forum, stated, "The schools are our biggest industry.  Whether you have kids in the schools or not, that's what maintains our property values.  We need to be there to support [the schools] and not get in the way."

189.    One day after Defendant SCHRAUFNAGEL's resignation, the CCSD Defendants accepted a proposal from a Manhattan-based public relations firm Marathon Strategies, which

24

included advice to "consider how it will explain to the media, parents and students that it acted swiftly and responsibly to the allegations and demonstrate that student safety is its top priority."

190.    Upon information and belief, Defendant CCSD paid Marathon Strategies $86,323.54 during 2015 and 2016.

191.    In July 2016, Defendant CCSD Board Vice President Victoria Tipp stated that Marathon Strategies was hired "without the knowledge of board members."

192.    Defendant MCKAY notified the District families by email on August 22, 2016 that training for educators and parents regarding sexual abuse of students by school staff would be scheduled.

193.    Upon information and belief no such training has been scheduled to date.

194.    In this same email communication, Defendant MCKAY reported that Defendant CCSD had now "improved interior and exterior lighting, install[ed] additional outdoor cameras, and improv[ed] visibility."

195.    At a September 27, 2016 Board meeting, Defendant CCSD Board Vice President Tipp stated, "I think it's silly to sit here and not let you know that we do agree that we need an independent investigation."

196.    Upon information and belief, no independent investigation of Defendant SCHRAUFNAGEL's abuse of HGHS students has taken place to date.

197.    On November 1, 2016, the Defendant BOE accepted the resignation of embattled School Superintendent Defendant MCKAY over her management of the Schraufnagel matter.

**THE CCSD DEFENDANTS FAILED TO IMPLEMENT POLICIES OR
COMPLY WITH POLICIES THAT WOULD HAVE PROTECTED ROE
FROM DEFENDANT SCHRAUFNAGEL'S ABUSIVE ACTS**

198.    The repeated sexual abuse to which ROE was subjected by Defendant SCHRAUFNAGEL was made possible by the pattern and practice of the CCSD Defendants of failing to exercise a minimal level of oversight over Defendant SCHRAUFNAGEL's interactions with its students, failing to investigate despite clear notice that more scrutiny was needed, failing to comply with federal and state law and its own policies regarding the prevention of child abuse and sexual harassment at the school, and of failing to train its employees and students as to when and how to report the sexual abuse of its students by one of its teachers to school district authorities.

199.    Prior to being sexually assaulted by his teacher at age 15, ROE had received no training and was aware of no policies describing and prohibiting sexual abuse of students by teachers.

200.    ROE was never trained as to the identity of any individuals at HGHS to whom he should report such activity, or how to do so.

201.    The teachers and assistant principals who walked through the theater department during Defendant SCHRAUFNAGEL's reign, who inevitably heard grossly inappropriate language from his students, saw a constant cluster of students tightly crammed with him into his office, an office decorated with dolls adorned with pubic hair, and who in all likelihood smelled marijuana in the building on a number of occasions, had not been trained to recognize signs of sexual abuse of children by adults in the school or to whom such suspicions should be reported.

202.    As set forth, *infra*, such policies existed.  But neither students nor staff were aware of them.

203.     Further, the CCSD Defendants failed to institute, implement or enforce any policies restricting social media and online interaction between teachers and students; policies governing student/teacher engagement after school hours; policies barring adults not employed by Defendant CCSD unfettered access to students on the campus; or policies restricting the unsupervised use of areas of the school.

**Lack of Compliance with Title IX of the Education Amendments of 1972**

204.     The purpose of Title IX is to prohibit discrimination on the basis of sex in any education program or activity that is federally funded.

205.     Upon information and belief, the CCSD Defendants have never promulgated a Title IX policy which adequately complies with the Title IX statute.

206.     Upon information and belief, the CCSD Defendants never provided ROE, his fellow students, or teachers and staff at the school with any training on the scope or purpose of Title IX, information regarding appropriate behavior by CCSD teachers towards their students, training on how this teacher's behavior constituted sexual and emotional harassment, or information on how to report harassing behavior.

207.     The CCSD Defendants never formally or informally provided ROE the identity of or contact information for any Title IX Compliance Officer, or any other individual responsible for addressing claims of harassment at the CCSD.

208.     The CCSD Title IX policy, as promulgated by the CCSD Defendant BOE, was last revised in 1991.

209.     The CCSD Title IX policy fails to describe in any fashion what Title IX is and does not offer any means for redress of a Title IX violation.

210.    The CCSD Title IX policy fails to comply with the statute's requirements regarding notice, training or procedures for a prompt and equitable response to complaints of sexual harassment and sexual assault.

211.    The CCSD Defendants displayed deliberate indifference to the safety of their students by failing to provide the training or guidance that is obviously necessary for implementation of a specific program or policy in compliance with Title IX.

212.    Upon information and belief, the CCSD Defendants failed to comply with Title IX upon receipt of accusations in 2011 of "Mr. Schraufnagel … abusing a student at HGHS" per the sworn statement of petitioner Mary Doe in *John Doe et al. v. Chappaqua Central School District et al.,* Index No. 61489/2016 (N.Y. Sup. Ct.).

### CCSD Policy # 9010: Child Abuse Reporting in an Educational Setting

213.    The Defendant CCSD has a policy, promulgated by its Defendant BOE in 2004 and still in effect during the pertinent time period, entitled *Child Abuse Reporting in an Educational Setting*, Policy # 9010. This policy is based upon the mandates of 23-B of the Education Law and Part 100.2(hh) of the Commissioner's Regulations that require the notification and annual training of school district officials and employees.

214.    The CCSD Defendants' policy states the following:

*The BOE, its officers and employees, shall endeavor to maintain an educational environment that is free from child abuse in an educational setting in accordance with the requirements of Article 23-B of the Education Law and Part 100.2(hh) of the Regulations of the Commissioner of Education. Child abuse in an educational setting by school officers and employees and school volunteers is strictly prohibited and required reporters shall promptly report any and all written or oral allegations of child abuse in an educational setting, as required by law and regulations implementing this policy.*

*Such report shall be received by the Building Principal who shall immediately notify the Superintendent of Schools.  The Building Principal shall thoroughly and*

28

*promptly investigate the allegations to determine whether or not reasonable*
*suspicion exists that an act of child abuse in an educational setting has been found*
*and forward such findings to the Superintendent of Schools.  The police authorities*
*shall immediately be notified in any case where reasonable suspicion of child abuse*
*in an educational setting by school officers, employees or volunteers has occurred.*
*The Superintendent of Schools shall send all requisite notices to parents and the*
*State Education Department when there is a finding of reasonable suspicion.*

215.    Policy # 9010 includes the following District staff as required reporters of suspected

child abuse: "school board member, teacher, school nurse, school guidance counselor, school

psychologist, school social worker, school administrator, other school personnel required to hold

a teaching or administrative license or certificate, teaching assistant or aide."

216.    The definition of "educational setting" set forth in Policy # 9010 includes the

buildings and grounds of the district, field trips, co-curricular and extra-curricular activity sites

and "any other location where direct contact between an employee or volunteer and a child has

allegedly occurred."

217.    Policy # 9010 charges the District's Superintendent with developing regulations

consistent with this policy, to facilitate its implementation and to assure that school district officials

and employees are trained in and notified of this policy.

218.    Upon information and belief, the CCSD Defendants never provided ROE, his

fellow students, or teachers and staff at the school with any training on the scope or purpose of this

policy, training on how behavior such as Defendant SCHRAUFNAGEL's constituted child abuse,

or information on how to report this form of child abuse.

219.    Upon information and belief, the CCSD Defendants failed to comply with its policy

and state law concerning child abuse reporting upon receipt of accusations in 2011 of "Mr.

Schraufnagel similarly abusing a student at HGHS."

***CCSD Policy No. 5080: Sexual Harassment of Students***

220.     The CCSD has a policy, promulgated by its BOE in 1994, revised in 2004 and still in effect during the pertinent time period, entitled *Sexual Harassment of Students* that states the following:

> *Sexual harassment is defined as conduct directed against a person of a different or same sex, because of his or her sex or actual or perceived sexual orientation, which creates a sexually hostile learning or school environment.*

221.     The School Superintendent's Regulations enacted to facilitate the implementation of this policy require that:

> *A student, parent of a student, or any District employee who believes that a student has been subjected to sexual harassment shall report the incident to his/her principal or to the Assistant Superintendent for Human Resources. Incidents of sexual harassment may be reported informally or through the filing of a formal complaint.*

222.     Appeals of any finding is made to the School Superintendent and then to the Defendant BOE.

223.     The Regulations further provide that:

> *The District Superintendent will, in the absence of a complaint, ensure that an investigation is commenced by the appropriate individuals upon learning of, or having reason to suspect, the occurrence of any sexual misconduct.*

224.     Upon information and belief, the CCSD Defendants never provided ROE, his fellow students, or teachers and staff with any training on the scope or purpose of this policy, training on how behavior such as Defendant SCHRAUFNAGEL's constituted sexual harassment, or information on how to report this form of sexual harassment.

225.     Upon information and belief, the CCSD Defendants failed to comply with its own policy regarding sexual harassment of students upon receipt of accusations in 2011 of "Mr. Schraufnagel similarly abusing a student at HGHS."

30

## THE CCSD DEFENDANTS WERE POLICY MAKERS WITH RESPECT TO THE ALLEGED MISCONDUCT

### CCSD'S Board of Education

226.     Pursuant to the New York Education Law § 2503, the BOE is charged with, *inter alia*: "Prescrib[ing] such regulations and by-laws as may be necessary to make effectual the provisions of this chapter and for the conduct of the proceedings of said Board and the transaction of its business affairs, for the general management, operation, control, maintenance and discipline of the schools, and of all other educational, social or recreational activities and other interests under its charge or direction."

227.     In this capacity, the BOE bears a fiduciary responsibility to the CCSD, is required to ensure that the school's policies comply with all relevant laws and regulations, and that these policies are implemented at the school.

228.     Defendant BOE "shall have power, and it shall be its duty . . . [t]o establish such rules and regulations concerning the order and discipline of the schools . . . as [it] may deem necessary to secure the best educational results … [and is required to] provide adequate training to its employees with respect to discrimination, bullying, or harassment based on sexual orientation or sex."  N.Y. Educ. Law § 1709.

229.     Charged with final decision making authority with respect to discipline and order in its school, as well as training its staff, managing and operating its schools, and training its students to be educated in the warning signs of harassment and abuse, Defendant BOE is a policy maker with respect to all misconduct alleged herein.

31

230.    Upon information and belief, the Defendant BOE knew of the reports of Defendant SCHRAUFNAGEL's misconduct with students other than ROE. The Defendant BOE consciously chose not to require an effective investigation of these reports, not to train the CCSD students and staff as to how to recognize and report on sexual harassment of a student by a teacher, and not to require appropriate supervision of Defendant SCHRAUFNAGEL despite the evident need for such supervision.

231.    Their decision not to act to protect the students was a deliberate choice that predictably resulted in this sexual abuse of ROE.

232.    These decisions represent the official policy of the District and demonstrate the Defendant BOE's willful indifference to ROE's clearly established right to attend public school with his bodily integrity intact.

### School Superintendent McKay

233.    Defendant MCKAY was the CCSD School Superintendent from July 1, 2011 through October 31, 2016.

234.    The Superintendent serves as the chief executive officer of the Defendant CCSD and is chiefly responsible for managing its day-to-day operations. This includes the responsibility of developing administrative regulations to facilitate implementation of the policies established by the Defendant BOE and for the overall planning, direction, control and evaluation of District activities.

235.    The Superintendent is required to enforce all provisions of laws, rules and regulations relating to the management of the Defendant CCSD, to operate and manage the District, and manage the allocation of resources District-wide.

236.    Defendant MCKAY bore independent responsibility for drafting regulations regarding the District's child abuse and sexual harassment policies and assuring the annual training of all school district students, officials and employees regarding these policies.

237.    Additionally, Defendant MCKAY had the authority to implement corrective measures on the District's behalf for violations of Title IX.  Those responsibilities included creating, implementing and correcting policies under Title IX, for avoiding and eliminating sexual harassment within the academic and extra-curricular programs at the Defendant CCSD.

238.    Upon information and belief, Defendant MCKAY chose not to enforce the required training or implement corrective measures or policies upon receipt of the notice in 2011 that Defendant SCHRAUFNAGEL had abused a student.

239.    That choice constitutes conduct representing the official policy of the school district.

240.    Defendant MCKAY was a policy maker with respect to the District's failure to avoid and eliminate sexual harassment and child abuse within the academic and extra-curricular programs at Defendant CCSD.

241.    Upon information and belief, Defendant MCKAY was aware of the reports of Defendant SCHRAUFNAGEL's misconduct with students other than ROE and made a conscious decision not to require an effective investigation or to require appropriate supervision of Defendant SCHRAUFNAGEL despite the evident need for both.

242.    Defendant MCKAY's decision not to act to protect the students was a deliberate choice that predictably resulted in the sexual abuse of ROE.

243.    These decisions represent the official policy of the District and demonstrate Defendant MCKAY's willful indifference to ROE's clearly established right to attend public school with his bodily integrity intact.

**High School Principals Selesnick and Rhodes**

244.    Defendant SELESNICK was Principal of HGHS during the 2010-2011 and 2011-2012 school years.

245.    Defendant  RHODES was the Principal of HGHS from July 1, 2012 through June 22, 2018.

246.    During their respective tenures as Principals of HGHS, Defendant SELESNICK and Defendant RHODES were the highest-ranking District employees in the high school, responsible for the safety of students and staff in the building, and in charge of supervision of the high school's teachers and staff.

247.    The HGHS Principal bears ultimate responsibility for the management of the high school, and the conduct of the high school principal represents official district policy within the purview of the high school.

248.    High School principals have final policy making authority with respect to the day-to-day enforcement of Title IX, the school's Code of Conduct, the Bill of Rights and Responsibilities of Students (# 5020), Child Abuse Reporting in a Public Setting (#9010), Sexual Harassment of Students (#5080), authority to take corrective action on behalf of the District to stop harassment and abuse within HGHS, and to discipline the perpetrators of such abuse and harassment.

249.   "Required reporters" in the school district were required to report any written or oral allegations of child abuse in an educational setting to HGHS Principals Defendant SELESNICK and Defendant RHODES.

250.   The harm that befell ROE at the hands of Defendant SCHRAUFNAGEL was under the respective control of these two HGHS Principals as on-site managers of the high school.

251.   Both Defendant SELESNICK and Defendant RHODES were, respectively, policy makers with respect to hiring, training, supervising, and evaluating teachers, authorizing the use of the school building generally and the theatre wing in particular, and the day-to-day safety of the high school students at HGHS.

252.   Upon information and belief, both Defendant SELESNICK and Defendant RHODES, respectively, made conscious decisions to fail to conduct an effective investigation in response to notice they received that Defendant SCHRAUFNAGEL had in fact abused students at HGHS.

253.   Both Defendant SELESNICK and Defendant RHODES, respectively, made conscious choices not to appropriately supervise Defendant SCHRAUFNAGEL despite the evident need for such supervision. Their respective decisions not to act to protect the students was a deliberate choice that predictably resulted in the sexual abuse of ROE.

254.   Their conduct, during their respective tenures as HGHS Principal, represents the official policy of the school district.

255.   These decisions represent the official policy of the CCSD Defendants and demonstrate the  willful indifference of  Defendant SELESNICK and Defendant RHODES to ROE's clearly established right to attend public school with his bodily integrity intact.

**FIRST CAUSE OF ACTION:**
**AGAINST DEFENDANT SCHRAUFNAGEL FOR VIOLATION OF**
**42 U.S.C. § 1983 – THE RIGHT TO BODILY INTEGRITY**

256.    Plaintiff ROE incorporates by reference all preceding paragraphs.

257.    Defendant SCHRAUFNAGEL, acting under color of state law, violated ROE's right to bodily integrity as guaranteed by the Fourteenth Amendment to the United States Constitution by subjecting him to repeated instances of sexual harassment and sexual abuse within the school building and during a school-sanctioned field trip.

258.    Defendant SCHRAUFNAGEL further violated ROE's right to bodily integrity while acting under color of state law by repeatedly providing the minor with narcotics, prescription drugs and alcohol and encouraging ROE to take said intoxicants in school and during school-sanctioned activities.

259.    As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

**SECOND CAUSE OF ACTION:**
**AGAINST CCSD DEFENDANTS FOR VIOLATION OF 42 U.S.C. § 1983 – RIGHT**
**TO BODILY INTEGRITY: FAILURE TO TRAIN, INVESTIGATE AND SUPERVISE**

*A.*    *The failure of the CCSD Defendants to train its staff and students to recognize and report on sexual harassment of students by a teacher proximately and foreseeably caused ROE's injury.*

260.    The Plaintiff incorporates by reference all preceding paragraphs

36

261.     The CCSD Defendants, acting under color of state law, violated ROE's clearly established right to bodily integrity as guaranteed by the Fourteenth Amendment of the United States Constitution.

262.     The CCSD Defendants' custom and practice of failing to train its staff and students as set forth below proximately caused ROE's injuries.

263.     The CCSD Defendants failed to train its staff at HGHS to recognize and report on clear indications that Defendant SCHRAUFNAGEL was engaging in inappropriate conduct and needed additional oversight in his interactions with students.

264.     The CCSD Defendants failed to train its students to recognize and report on abusive, inappropriate conduct by adult staff against them.

265.     The obligation of the CCSD Defendants to train its staff and students to recognize and report on sexual abuse and sexual harassment was made clear by federal and state law and their own policies.

266.     By failing, as a custom and practice, to train both staff and students as to how to recognize and report sexual harassment and sexual abuse of students by teachers to Defendant CCSD authorities, the CCSD Defendants acted with deliberate indifference to ROE's clearly established right to attend public school with his bodily integrity intact, as guaranteed by the Fourteenth Amendment to the United States Constitution.

267.     As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

B.     ***The failure of the CCSD Defendants to exercise adequate supervision over Defendant SCHRAUFNAGEL proximately and foreseeably caused the deprivation of ROE's clearly established right to bodily integrity.***

268.    The Plaintiff incorporates by reference all preceding paragraphs.

269.    The CCSD Defendants' custom and practice of failing to supervise Defendant SCHRAUFNAGEL in his interactions with students, notwithstanding notice that such supervision was warranted, proximately caused ROE's injuries.

270.    The CCSD Defendants wholly abdicated their responsibility to exercise appropriate supervision of Defendant SCHRAUFNAGEL in his interactions with their minor students.

271.    Despite indications that supervision was required, the CCSD Defendants failed to respond with the oversight required by common sense and minimal concern for the welfare of their students.

272.    The CCSD Defendants were all policy makers with respect to the duty to undertake or direct appropriate supervision of Defendant SCHRAUFNAGEL and his students.

273.    The CCSD Defendants' inadequate supervision of Defendant SCHRAUFNAGEL in his interaction with HGHS students, and with ROE, constitutes deliberate indifference to the right of ROE to maintain his bodily integrity as a student at HGHS, as guaranteed by the Fourteenth Amendment of the United States Constitution.

274.    As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

*C.*     ***The CCSD Defendants' failure to appropriately investigate multiple indications of inappropriate conduct and judgment of Defendant SCHRAUFNAGEL proximately and foreseeably led to ROE's injury.***

275.    The Plaintiff incorporates by reference all preceding paragraphs.

276.    The CCSD Defendants, acting under color of state law, violated ROE's right to bodily integrity as guaranteed by the Fourteenth Amendment to the United States Constitution, by failing to investigate earlier reports that Defendant SCHRAUFNAGEL behaved inappropriately with his students.

277.    In or about the late fall of 2011, Defendant SCHRAUFNAGEL told ROE that he was worried about a legal problem involving an HGHS student.

278.    In addition, in an affidavit filed in a New York State Supreme Court case arising out of Defendant SCHRAUFNAGEL's sexual abuse of students, it is alleged by a parent of an HGHS student that the current HGHS Principal notified her that in 2011 there had been accusations made about Defendant SCHRAUFNAGEL similarly abusing another student at the high school.

279.    Moreover, CCSD teacher Benack told Defendant BOE and Defendant MCKAY at a CCSD Board meeting that he was aware of three individuals, himself included, who contacted District administrators regarding their concerns about Defendant SCHRAUFNAGEL "long before June of 2015."

280.    Had any of these reports of misconduct been competently investigated, Defendant SCHRAUFNAGEL's widespread, chronic abuse of his students, including ROE, would have been discovered and stopped.

281.    Instead, the CCSD Defendants, with willful indifference to the rights of its students to attend public school free of sexual harassment, or exposure to drugs and alcohol and sexual abuse, failed to properly investigate the claims of Defendant SCHRAUFNAGEL's misconduct.

282.    The CCSD Defendants' failure to investigate claims of Defendant SCHRAUFNAGEL's misconduct with his students proximately caused the years of sexual harassment and abuse that ROE suffered at the hands of Defendant SCHRAUFNAGEL, in violation of his right to bodily integrity as guaranteed by the Fourteenth Amendment to the United States Constitution.

283.    As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

### THIRD CAUSE OF ACTION:
### AGAINST CCSD DEFENDANTS AND DEFENDANT BOE
### FOR VIOLATION OF ROE'S RIGHTS UNDER TITLE IX

284.    The Plaintiff incorporates by reference all preceding paragraphs.

285.    Defendant CCSD is a recipient of federal funding under Title IX.

286.    From in or about September 1, 2003 through and including on or about September 2015, Defendant CCSD employed Defendant SCHRAUFNAGEL as a speech and theater teacher.

287.    Upon information and belief, the CCSD Defendants had actual knowledge that Defendant SCHRAUFNAGEL was engaging in abuse of his students, *inter alia,* from a complaint that was filed in or about 2011.

288.    The CCSD Defendants were deliberately indifferent to the abuse and harassment, despite exercising substantial control over the harassment and the context in which the known harassment was occurring.

289.    The CCSD Defendants' response to known harassment and discrimination was clearly unreasonable in light of the known circumstances.

290.     Defendant SCHRAUFNAGEL harassed ROE based on his sex by, without limitation, subjecting ROE to sexual comments, pressure, and abuse, and assault.

291.     Defendant SCHRAUFNAGEL's sexual assault, harassment and abuse of ROE was sufficiently severe and pervasive to create what a reasonable person would consider a hostile environment in the CCSD that deprived him of access to the educational opportunities and benefits provided by the school.

292.     Defendant SCHRAUFNAGEL's sexual assault, harassment and abuse of ROE undermined and detracted from ROE's equal access to the CCSD's institutional resources and/or opportunities.  Furthermore, Defendant SCHRAUFNAGEL's harassment had a concrete, negative effect on ROE's ability to participate in CCSD's educational opportunities.

293.     ROE in fact found the environment created by Defendant SCHRAUFNAGEL's sexual harassment to be hostile and abusive.

294.     The CCSD Defendants had actual notice of Defendant SCHRAUFNAGEL's sexual harassment by the 2011 complaint reported by Defendant RHODES, which included allegations of Defendant SCHRAUFNAGEL similarly abusing a student.

295.     Upon information and belief, further actual notice had been provided by a prior legal issue concerning Defendant SCHRAUFNAGEL and an HGHS student.

296.     The CCSD Defendants, as recipients of Title IX funds, had a duty to deter the risk of further sexual harassment by Defendant SCHRAUFNAGEL.

297.     The CCSD Defendants had the authority to implement corrective measures and policies.

298.     The CCSD Defendants acted with deliberate indifference to the harassment by, without limitation, failing to sufficiently investigate repeated episodes of sexual harassment and

41

to take adequate measures, such as adopting appropriate policies, to stop such future misconduct against its students.

299.    As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

## FOURTH CAUSE OF ACTION:
### AGAINST DEFENDANT SCHRAUFNAGEL FOR VIOLATION OF
### 42 U.S.C. § 1983 – THE RIGHT TO EQUAL PROTECTION OF THE LAW

300.    Plaintiff ROE incorporates by reference all preceding paragraphs.

301.    Defendant SCHRAUFNAGEL, acting under color of state law, treated ROE, a homosexual student, differently than his heterosexual or perceived to be heterosexual students.

302.    Defendant SCHRAUFNAGEL targeted, groomed, sexually harassed and sexually abused ROE based on ROE's perceived sexual orientation.

303.    Defendant SCHRAUFNAGEL violated ROE's right to attend public school free of sexual harassment and sexual abuse.

304.    Defendant SCHRAUFNAGEL violated ROE's right to be treated equally to the students that the teacher perceived to be heterosexuals, as guaranteed by the Fourteenth Amendment to the United States Constitution.

305.    As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

**FIFTH CAUSE OF ACTION:**
**AGAINST ALL CCSD DEFENDANTS FOR NEGLIGENCE**

306.    The Plaintiff ROE incorporates by reference all preceding paragraphs.

307.    From in or about September 2004 until September 2015, the CCSD Defendants employed Defendant SCHRAUFNAGEL.

308.    At all times relevant to this controversy, Defendant SCHRAUFNAGEL was unfit for the position of teacher at Defendant CCSD.

309.    At all times mentioned herein, the CCSD Defendants and their agents, servants, employees, and contractors owed its students, including ROE, a duty of care to keep him safe from assault, battery, and sexual misconduct while he was in school and participating in school and extracurricular activities.

310.    The CCSD Defendants negligently breached their duty to ROE.

311.    ROE suffered damages as a result of that breach of duty.

312.    The CCSD Defendants were responsible for their own negligence, and for that of each of their employees who were negligent and acting within the scope of his or her employment.

313.    CCSD Defendants knew or should have known through the exercise of reasonable diligence that Defendant SCHRAUFNAGEL was unfit for the position of teacher at HGHS.

314.    Despite actual and constructive knowledge that Defendant SCHRAUFNAGEL was unfit to teach HGHS students and travel with HGHS students, the CCSD Defendants permitted unsupervised, unfettered access to HGHS students over the course of multiple years.

315.    There was a foreseeable risk of harm by Defendant SCHRAUFNAGEL to ROE and other students at HGHS.

316.    As a proximate cause of the CCSD Defendants' negligence, ROE was injured by

Defendant SCHRAUFNAGEL'S criminal conduct and sexual abuse.

317. As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

**SIXTH CAUSE OF ACTION:**
**AGAINST ALL CCSD DEFENDANTS FOR NEGLIGENT**
**FAILURE TO TRAIN, SUPERVISE AND INVESTIGATE**

A.   *The negligent failure of the CCSD Defendants to train its staff and students to recognize and report on sexual harassment of students by a teacher proximately and foreseeably caused ROE's injury.*

318. The Plaintiff incorporates by reference all preceding paragraphs.

319. The CCSD Defendants' negligence in failing to train its staff and students regarding sexual harassment of students by teachers proximately caused ROE's injuries.

320. The CCSD Defendants failed to train its staff at HGHS to recognize and report on clear indications that Defendant SCHRAUFNAGEL was engaging in inappropriate conduct and needed additional oversight in his interactions with students.

321. The CCSD Defendants failed to train its students to recognize and report on abusive, inappropriate conduct by adult staff against them.

322. When he was a 15 year old HGHS student, ROE was subjected to relentless stream of sexual harassment by Defendant SCHRAUFNAGEL, that included sexually explicit stories, grossly inappropriate attention and physical assault.

323. ROE had not been trained to understand that he was being sexually harassed nor was he ever informed as to whom he should report such harassment.

324.     As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

B.    *The negligent failure of the CCSD Defendants to adequately supervise Defendant SCHRAUFNAGEL despite the evident need for such oversight proximately and foreseeably caused ROE's injury.*

325.     The Plaintiff incorporates by reference all preceding paragraphs.

326.     The CCSD Defendants' failure to supervise Defendant SCHRAUFNAGEL in his interactions with students, notwithstanding notice that such supervision was warranted, proximately caused ROE's injuries.

327.     The CCSD Defendants wholly abdicated their responsibility to exercise appropriate supervision of Defendant SCHRAUFNAGEL in his interactions with their minor students.

328.     Despite indications that supervision was required, the CCSD Defendants failed to respond with the oversight required by common sense and minimal concern for the welfare of their students.

329.     The CCSD Defendants' inadequate supervision of Defendant SCHRAUFNAGEL in his interaction with HGHS students, and with ROE, was negligent.

330.     As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

*C.*   ***The negligent failure of the CCSD Defendants to adequately investigate multiple indications of inappropriate conduct and judgment of Defendant SCHRAUFNAGEL proximately and foreseeably caused ROE's injury.***

331.   The Plaintiff incorporates by reference all preceding paragraphs.

332.   The CCSD Defendants acted negligently by failing to investigate multiple reports that Defendant SCHRAUFNAGEL behaved inappropriately with his students.

333.   Had these reports of misconduct been competently investigated, Defendant SCHRAUFNAGEL's widespread, chronic abuse of his students, including ROE, would have been discovered and stopped.

334.   The CCSD Defendants' failure to investigate claims of Defendant SCHRAUFNAGEL's misconduct with his students proximately and foreseeably caused the years of sexual harassment and abuse that ROE suffered at the hands of Defendant SCHRAUFNAGEL.

335.   As a direct and proximate result of the CCSD Defendants' actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

### SEVENTH CAUSE OF ACTION:
### AGAINST DEFENDANT SCHRAUFNAGEL
### FOR ASSAULT OF ROE

336.   The Plaintiff  incorporates by reference all preceding paragraphs.

337.   Defendant SCHRAUFNAGEL engaged in criminal physical abuse of ROE.

338.   Defendant SCHRAUFNAGEL's aforementioned actions placed ROE in apprehension of imminent harmful or offensive bodily contact.

339.   As a direct and proximate result of Defendant Schraufnagel's actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering,

impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

### EIGHTH CAUSE OF ACTION:
### AGAINST DEFENDANT SCHRAUFNAGEL
### FOR BATTERY OF ROE

340.     The Plaintiff incorporates by reference all preceding paragraphs.

341.     Defendant SCHRAUFNAGEL touched ROE in a harmful and offensive manner.

342.     Defendant SCHRAUFNAGEL did so without the consent of ROE.

343.     As a direct and proximate result of Defendant SCHRAUFNAGEL's actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

### NINTH CAUSE OF ACTION:
### AGAINST DEFENDANT SCHRAUFNAGEL
### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

344.     The Plaintiff incorporates by reference all preceding paragraphs.

345.     The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

346.     The aforementioned conduct was intentional and done for the sole purpose of causing severe  emotional distress to ROE.

347.     As a direct and proximate result of Defendant SCHRAUFNAGEL's actions, ROE suffered damages, including without limitation emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, medical costs, economic loss and alienation.

348.    The instant case falls within one or more exceptions to the provisions of Article 16 of the New York Civil Practice Law and Rules, including but not limited to the exceptions set forth in CPLR §§ 1601, 1602(1)(B), 1602(2)(iv), 1602(5), 1602(7) and 1602(11).

**WHEREFORE**, the Plaintiff prays that judgment be entered:

I.    Awarding ROE damages in an amount to be determined at trial including, without limitation, compensatory damages, punitive damages, damages due to emotional distress, attorney's fees, reasonable costs and prejudgment interest; and

II.    Any other further relief as this Court deems appropriate.

Dated:  Armonk, New York
        August 6, 2019

**ASHER GAUGHRAN P.C.**

By: _____/s/_____
        Julie Gaughran (JEG 6790)
        Rachel Asher (RSA 2610)
        Asher Gaughran P.C.
        4 MacDonald Avenue
        Armonk, New York 10504
        (914) 273-3187